**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | FILE NO. 4:21-cv-78-TWT |
| | ) | |
| v. | ) | |
| | ) | |
| TRACY BURNS as Surviving Spouse and as Administrator of the Estate of ROBERT E. BURNS, deceased, PEEK PAVEMENT MARKING, LLC, WRIGHT BROTHERS CONSTRUCTION COMPANY, INC., NORTHWEST GEORGIA PAVING, INC., and DONALD WAYNE KING, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Great American Insurance Company ("Great American") files this Complaint for a Declaratory Judgment, respectfully showing this Court as follows:

## SUMMARY OF ACTION

1.

This Declaratory Judgment Action arises out of claims for damages made by Defendant Tracy Burns ("Burns") in connection with a fatal vehicle accident (the "Accident") that occurred on May 30, 2019 in Calhoun, Gordon County, Georgia at the site of a road construction project.

2.

On December 12, 2019, Burns filed a lawsuit styled *Tracy Burns as Surviving Spouse and as Administrator of the Estate of Robert E. Burns, deceased v. Peek Pavement Marking, LLC, et al.*, Civil Action File No. SC-19-CV-1550, in the State Court of Muscogee County, Georgia (the "Underlying Action").

3.

Burns alleges in the Underlying Action, *inter alia*, that underlying Defendants Peek Pavement Marking, LLC ("Peek Pavement") and Wright Brothers Construction Company, Inc. ("Wright Bros."), along with Northwest Georgia Paving, Inc. and Donald Wayne King, were negligent in connection with the Accident and are liable to Burns for damages.

4.

Both Peek Pavement and Wright Bros. seek coverage under an insurance contract between Great American and Fortson-Peek Company, Inc., policy no. TUU 2-37-05-80-01 issued for the policy period January 1, 2019 to October 1, 2019 (the "Policy").

5.

Burns has sought in excess of the $20 million limit of the Policy in connection with her claims against Peek Pavement and Wright Bros. via time-limited demand correspondence.

6.

Great American seeks a declaration that it is not obligated to indemnify Defendant Wright Bros. as a purported additional insured in connection with the Accident or the Action under the Policy or that, at minimum, Great American's indemnity obligation is limited by the terms of the Policy's "Additional Insured Limitation" Endorsement.

7.

Great American additionally seeks a declaration that the Policy's professional liability exclusions eliminate coverage as to both Wright Bros. and Peek Pavement.

8.

Great American also seeks a declaration that the Policy is excess to other available insurance or, at most, shares liability on a *pro rata* by limits basis.

## PARTIES, JURISDICTION AND VENUE

### 9.

Plaintiff Great American is an Ohio corporation with its principal place of business in Cincinnati, Ohio, and so is a citizen of Ohio.

### 10.

Defendant Tracy Burns is a resident of Georgia, intends to remain in Georgia indefinitely, and is a citizen of Georgia and resides in Gordon County, Georgia. Burns may be personally served at 1779 Dews Pond Road, S.E., Calhoun, Georgia 30701-4712. Ms. Burns is subject to the jurisdiction of this court and venue as to her is proper pursuant to 28 U.S.C. § 1391(b)(2).

### 11.

Defendant Peek Pavement Marking, LLC is a Georgia limited liability company with its principal place of business in Columbus, Georgia, and so is a citizen of Georgia. Upon information and belief, all members of the LLC are residents of Georgia, intend to remain in Georgia indefinitely, and are citizens of Georgia. Peek Pavement may be served via its registered agent, Charles T. Staples, Esq., at 233 12th Street, Suite 500, Columbus, Georgia 31901. Peek Pavement is subject to the jurisdiction of this court and venue as to it is proper pursuant to 28 U.S.C. § 1391(b)(2).

12.

Defendant Wright Brothers Construction Company, Inc. is a Tennessee corporation with its principal place of business in Charleston, Tennessee and so is a citizen of Tennessee.  Wright Bros. may be served via its registered agent, C T Corporation System, at 289 S. Culver Street, Lawrenceville, Georgia 30046-4805. Wright Bros. is subject to the jurisdiction of this court and venue as to it is proper pursuant to 28 U.S.C. § 1391(b)(2).

13.

Defendant Northwest Georgia Paving, Inc. is a Georgia corporation with its principal place of business in Calhoun, Georgia and so is a citizen of Georgia. Northwest Georgia Paving, Inc. may be served via its registered agent, Brian Land, at 508 Riverside Parkway, Suite 100, Rome, Georgia 30161. Northwest Georgia Paving, Inc. is subject to the jurisdiction of this court and venue as to it is proper pursuant to 28 U.S.C. § 1391(b)(2).

14.

Defendant Donald Wayne King is a resident of Georgia, intends to remain in Georgia indefinitely, and is a citizen of Georgia and resides in Bartow County, Georgia and may be personally served at 148 King Road NW, Adairsville, Georgia

30103.  Mr. King is subject to the jurisdiction of this court and venue as to him is proper pursuant to 28 U.S.C. § 1391(b)(2).

15.

Great American files this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

16.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Great American and Defendants, and the amount in controversy exceeds $75,000, exclusive of costs.

17.

Venue is proper in the Rome Division of the United States District Court for the Northern District of Georgia.

## **THE POLICY**

18.

Great American issued the Policy, policy no. TUU 2-37-05-80-01, to "Fortson-Peek Company, Inc." for the policy period January 1, 2019 to October 2, 2020 [Exhibit "A."]  The Policy identifies the insured's address in Columbus, Georgia.

19.

The Policy contemplates a limit of liability of $20 million both per occurrence and in the aggregate in excess of the $1 million per occurrence limit of a General Liability insurance policy issued by Arch Insurance Company ("Arch"). The Policy identifies the policy issued by Arch (the "Arch Policy") in its "Schedule of Underlying Insurance."

20.

The Policy generally provides via Section I., "COVERAGE," that coverage exists as to any "insured" for "those sums in excess of the 'Retained Limit' that the 'Insured' becomes legally obligated to pay by reason of liability imposed by law or assumed by the 'Insured' under an 'insured contract' because of," among other things, "bodily injury" resulting from an "occurrence" that takes place during the policy period. The "Retained Limit," as defined at Section II., "LIMITS OF INSURANCE," Part G., is the greater of either the Self-Insured Retention or the applicable underlying limits identified in the Schedule of Underlying Insurance" – the $1 million per occurrence limit contemplated by the Arch Policy.

21.

Section V. of the Policy, "DEFINITIONS," Part F., as modified via the "ADDITIONAL INSURED LIMITATION" endorsement, defines "Insured" to mean, among other things:

> **5.** Any person or organization, other than the Named Insured, included as an additional "Insured" solely by virtue of an "Insured Contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured." The Limits of Insurance applicable to the additional "Insured" are the lesser of those specified in the Declarations of this policy or those specified in the "insured contract" less the applicable "underlying insurance." The Limits of Insurance applicable to the additional "Insured" are included within, and not in addition to, the Limits of Insurance shown in the Declarations.

22.

"Insured Contract," in turn, is defined at Part G. of Section V. as follows:

**G.** "Insured contract" means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. "Tort liability" means a civil liability that would be imposed by law in the absence of any contract or agreement.

23.

The Policy includes an exclusion by endorsement, "PROFESSIONAL LIABILITY EXCLUSION," providing, in relevant part, that no coverage exists for "[a]ny liability for, caused by, arising out of, or in connection with the rendering of or failure to render any professional service."

24.

A separate endorsement entitled "CONTRACTOR'S LIMITATION ENDORSEMENT (FORM B) further provides, in relevant part:

> **B.**   This policy does not apply to any liability arising out of:
>
> ***
>
> **3.**   the rendering of or the failure to render any professional services by or for the Insured, including but not limited to:
>
> **a.**   the preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, filed orders, change order or drawings and specifications; and
>
> **b.**   supervisory, inspection, architectural or engineering activities.

25.

Section VI., "Conditions," Part J., "Other Insurance," provides:

**J.     Other Insurance**

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance.  Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance.  However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

## THE SUBCONTRACT

26.

Wright Bros. and Peek Pavement entered into a subcontract (the "Subcontract") in connection with a roadwork project at the site of the Accident in Calhoun, Gordon County, Georgia.  [Ex. "B."]  A representative of Wright Bros. signed on October 4, 2016, whereas a Peek representative signed on September 23, 2016.

27.

Article XI of the Subcontract, "INDEMNIFICATION," Part 11.0, requires Peek Pavement to

> …DEFEND, INDEMNIFY, HOLD HARMLESS, PROTECT, AND EXONERATE WRIGHT…FROM AND AGAINST ANY AND ALL LIABILITY CLAIMS, DAMAGES, LOSSES, SUITS, ACTIONS, DEMANDS, LIENS, ARBITRATIONS, ADMINISTRATIVE

PROCEEDINGS, AWARDS, JUDGMENTS, EXPENSES, COSTS, AND ATTORNEY'S FEES PERTAINING TO ECONOMIC LOSS OR DAMAGE, LABOR DISPUTES, SAFETY REQUIREMENTS, PERFORMANCE OR NON-PERFORMANCE OF OBLIGATIONS, CERTIFICATIONS, PROPERTY RIGHTS OF THIRD PARTIES, PERSONAL INJURY, BODILY INJURY, SICKNESS, DISEASE, DEATH, OR DAMAGE TO OR DESTRUCTION OF PROPERTY (INCLUDING LOSS OF USE THEREOF) WHICH (1) ARE CAUSED IN WHOLE OR IN PART BY SUBCONTRACTOR (HEREIN DEFINED TO INCLUDE BUT NOT LIMITED TO SUBCONTRACTOR'S OWNERS, EMPLOYEES, AGENTS, REPRESENTATIVES, SUBCONTRACTOR'S SUPPLIERS, CONTRACTEES, AND INVITEES OR OTHER THIRD PARTIES CONNECTED WITH THE SUBCONTRACT OR THE AGENTS OR EMPLOYEES OF ANY OF THEM), (II) ARISE FROM OR OCCUR IN CONNECTION WITH WORK UNDERTAKEN OR TO BE PERFORMED BY SUBCONTRACTOR REGARDLESS OF WHETHER THE SAME IS WITHIN OR BEYOND THE SCOPE OF WORK, OR (III) ARISE FROM OR ARE CONNECTED WITH ANY OTHER ACT OR OMISSION RELATING TO SUBCONTRACTOR, THIS SUBCONTRACT OR THE SUBCONTRACT WORK. IT IS THE SPECIFIC AND EXPRESS INTENT OF THIS SUBCONTRACT FOR THE FOREGOING COVENANTS AND INDEMNITY OBLIGATIONS TO APPLY TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW REGARDLESS OF WHETHER THE LIABILITY IS CAUSED IN WHOLE OR IN PART BY A PARTY INDEMNIFIED HEREUNDER INCLUDING WITHOUT LIMITATION WHETHER OR NOT THE SAME BE CAUSED BY OR ARISE OUT OF THE JOINT, CONCURRENT, OR CONTRIBUTORY

NEGLIGENCE OF A PARTY INDEMNIFIED
HEREUNDER.

28.

Via Part 11.4 of the Subcontract, added via Exhibit "A" thereto, Peek
Pavement's indemnity obligation is modified in accordance with Georgia law:

> Notwithstanding the foregoing, Subcontractor shall not be
> required to defend, indemnify hold harmless, protect
> and/or exonerate Wright to the extent prohibited by
> appliable law, including O.C.G.A. § 13-8-2.

29.

Article IX of the Subcontract, "INSURANCE," provides in relevant part:

### ARTICLE IX: INSURANCE

\*\*\*

9.7 The Subcontractor agrees to obtain and pay the
premium for Workers Compensation, Automobile
Liability, General Liability and other appropriate
Insurance. The limits of such insurance shall be no less
than the following:

\*\*\*

Automobile Liability          $500,000 property damage
General Liability             $1,000,000 per incident

30.

The signature page of the Subcontract includes handwritten and stamped

notations. The stamp states: "This contract is contingent upon acceptance of the

insurance limits listed on Peek Pavement Marking's Certificate of Liability

Insurance as sufficient coverage for this project." The Certificate of Liability Insurance is not attached to the Subcontract as an exhibit.

31.

The Certificate of Liability Insurance referenced via the stamp is dated September 22, 2016, the day before Peek Pavement's representative signed the Subcontract. (Ex. "C"). The Certificate references a primary General Liability policy issued by Zurich with limits of $1 million per occurrence and an umbrella policy issued by American Guarantee & Liability with limits of $10 million both per occurrence and in the aggregate.

## THE ACCIDENT AND THE UNDERLYING ACTION

32.

On May 30, 2019, Robert Burns was riding a motorcycle southbound on Georgia Highway 3 near the intersection of Enterprise Drive in Calhoun, Gordon County, Georgia through an area undergoing construction pursuant to the Subcontract, including paving and marking.

33.

Wright Bros. had been retained as the General Contractor on the project, while Peek Pavement was performing work pursuant to the Subcontract. Defendant Northwest Georgia Paving, Inc. was also a Wright Bros. subcontractor.

34.

At the same time Burns proceeded southbound, Defendant Donald Wayne King ("King") was driving a Chevrolet S10 pickup truck northbound and struck Burns head-on.

35.

Burns died as a result of the Accident.

36.

Tracy Burns, as the surviving spouse and Administrator of the Estate of Robert Burns, filed suit in connection with the Accident and Robert Burns' death on December 12, 2019, naming as Defendants Fortson-Peek Company, Inc., Wright Brothers Construction Company, Inc., Northwest Georgia Paving, Inc., and Donald Wayne King. (The initial Complaint in the Underlying Action is attached as Ex. "D" hereto). The Court in the Underlying Action entered a Consent Order substituting Peek Pavement in place of Fortson-Peek Company, Inc. on June 15, 2020. Plaintiff filed an Amended Complaint in the Underlying Action on or about October 15, 2020. (Ex. "E" hereto).

37.

Burns alleges via her Amended Complaint that Robert Burns' death was the result of the negligence and/or professional negligence of Wright Bros., Peek

Pavement, and Northwest Georgia Paving, Inc., including with respect to their alleged failure to operate the construction site around the scene of the Accident in a manner which would have allowed Defendant King to safely navigate the northbound lane.

### 38.

Wright Bros. seeks coverage in connection with the Accident and the Underlying Action as an additional insured under the Policy.

### 39.

Subsequent to the commencement of the Action, Plaintiff has repeatedly demanded the $20 million limit of the Policy in settlement with respect to both Peek Pavement and Wright Bros.

### 40.

Wright Bros. has separately demanded that Great American accept such demands.

## COUNT ONE
## DECLARATORY JUDGMENT

## WRIGHT BROS. IS NOT AN ADDITIONAL INSURED BECAUSE THE SUBCONTRACT IS NOT AN "INSURED CONTRACT"

### 41.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

42.

The Policy designates as an additional insured "[a]ny person or organization, other than the Named Insured, included as an additional "Insured" solely by virtue of an "Insured Contract ...."

43.

The Policy defines an "Insured Contract" as

any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization ....

44.

The Subcontract, while purportedly requiring Peek to indemnify Wright Bros., provides via Exhibit "A" that

Subcontractor shall not be required to defend, indemnify hold harmless, protect and/or exonerate Wright to the extent prohibited by appliable law, including O.C.G.A. § 13-8-2.

45.

That code section provides, in relevant part, that

A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and

16

excavating connected therewith, purporting to require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract or other named indemnitee, including its, his, or her officers, agents, or employees, against liability or claims for damages, losses, or expenses, including attorney fees, arising out of bodily injury to persons, death, or damage to property caused by or resulting from the sole negligence of the indemnitee, or its, his, or her officers, agents, or employees, is against public policy and void and unenforceable.

O.C.G.A. § 13-8-2(b).

46.

Georgia law therefore prohibits Peek Pavement from assuming the tort liability of Wright Bros. as to its sole negligence.

47.

Wright Bros. is not an additional insured as contemplated by the "ADDITIONAL INSURED LIMITATION" endorsement, therefore.

### COUNT TWO
### DECLARATORY JUDGMENT

### THE "ADDITIONAL INSURED LIMITATION" ENDORSEMENT ELIMINATES ANY POTENTIAL INDEMNITY OBLIGATION TO WRIGHT BROS. UNDER THE POLICY

48.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

17

49.

The "ADDITIONAL INSURED LIMITATION ENDORSEMENT" of the Policy specifies that the "Limits of Insurance applicable to [an] additional 'Insured' are the lesser of those specified in the Declarations … or those specified in the 'insured contract' less the applicable 'underlying insurance.'"

50.

The Subcontract specifies that Peek Pavement was to obtain insurance for the benefit of Wright Bros. in an amount "no less than" $1 million.

51.

The insurance available from Arch in the amount of $1 million must be exhausted before the Policy is even potentially implicated.

52.

Even assuming Wright Bros. qualifies as an "additional 'Insured'" and that the Subcontract is an "insured contract," therefore, the applicable limit of the Policy is **zero**: the $1 million limit specified in the Subcontract less the $1 million in underlying coverage available from Arch.

18

## COUNT THREE
## DECLARATORY JUDGMENT

**ALTERNATIVELY, THE "ADDITIONAL INSURED LIMITATION" ENDORSEMENT LIMITS ANY POTENTIAL INDEMNITY OBLIGATION TO WRIGHT BROS. UNDER THE POLICY**

### 53.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

### 54.

The Certificate of Liability Insurance referenced in the Subcontract and dated September 22, 2016 references a primary General Liability policy issued by Zurich with limits of $1 million per occurrence and an umbrella policy issued by American Guarantee & Liability with limits of $10 million both per occurrence and in the aggregate.

### 55.

Even assuming the reference to the Certificate alters Peek Pavement's obligations under the Subcontract with respect to the provision of insurance, it notes an umbrella limit of only $10 million excess of $1 million in primary coverage.

56.

Given the terms of the "ADDITIONAL INSURED LIMITATION" endorsement, and even assuming Wright Bros. qualifies as an "additional 'Insured,'" the maximum extent of Great American's indemnification obligation is $9 million, the $10 million umbrella limit contemplated in the Certificate less the $1 million in underlying coverage.

## COUNT FOUR
## DECLARATORY JUDGMENT

### THE POLICY'S PROFESSIONAL LIABILITY EXCLUSION BARS COVERAGE AS TO BOTH WRIGHT BROS. AND PEEK PAVEMENT

57.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

58.

Burns alleges in the Underlying Action that Wright Bros. and/or Peek may be liable for professional negligence.

59.

The Policy unequivocally eliminates coverage for professional negligence via both the "PROFESSIONAL LIABILITY EXCLUSION" endorsement and the "CONTRACTOR'S LIMITATION ENDORSEMENT."

60.

No coverage exists under the Policy to either Wright Bros. or Peek Pavement for Burns' professional liability claims, therefore.

**COUNT FIVE**
**DECLARATORY JUDGMENT**

**THE POLICY IS EXCESS TO OTHER AVAILABLE INSURANCE OR SHARES IN ANY INDEMNITY OBLIGATOIN *PRO RATA* BY LIMITS**

61.

Great American repeats and realleges the foregoing paragraphs as if fully set forth herein.

62.

The "Other Insurance" language of the Great American Policy provides that it is excess to any other insurance unless specifically written as excess to the Great American Policy.

63.

The Policy only even potentially applies, therefore, after all other insurance available to Wright Bros. and Peek is exhausted.

64.

Alternatively, and even assuming other insurance available to Wright Bros. and/or Peek Pavement may be deemed to apply along with the Policy, Great American is entitled to *pro rata* contribution by limits.

WHEREFORE, Great American respectfully requests that this Court enter a Declaratory Judgment in Great American's favor and:

1.  declare that Wright Bros. is not an "insured" under the Policy;

2.  declare that Great American lacks any indemnity obligation to Wright Bros. or, alternatively, that Great American's obligation to Wright Bros. is capped at a maximum of $9 million;

3.  declare that the Policy's exclusions for professional liability eliminate coverage;

4.  declare that the Policy is excess to all other insurance available to Wright Bros. or, alternatively, that the Policy applies along with other available insurance *pro rata* by limits;

5.  grant a trial by jury; and

6.  award such other and further relief as this Court deems just and proper.

Respectfully submitted, this 9th day of April, 2021.

**KERSHAW WHITE LLC**

5881 Glenridge Drive
Suite 100
Atlanta, GA  30328
470-443-1100 main
470-344-0958 direct
404-748-1179 fax
*jeff.kershaw@kershawwhite.com*

**s/ Jeffrey A. Kershaw**
**JEFFREY A. KERSHAW**
Georgia Bar No. 159054

***Counsel for Plaintiff Great American***
***Insurance Company***