GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
eFILED
12/12/2019 2:18 PM
DANIELLE F. FORTE, CLERK

## IN THE STATE COURT OF MUSCOGEE COUNTY
## STATE OF GEORGIA

TRACY BURNS as Surviving Spouse and as
Administrator of the Estate of ROBERT E.
BURNS, deceased,

                    Plaintiff

vs.

FORTSON-PEEK COMPANY, INC.,
WRIGHT BROTHERS CONSTRUCTION
COMPANY, INC., NORTHWEST GEORGIA
PAVING, INC., and DONALD WAYNE
KING

                    Defendants.

JURY TRIAL DEMANDED

CIVIL ACTION
FILE NO.   **SC-19-CV-1550**

## COMPLAINT

COMES NOW Tracy Burns, as Surviving Spouse and as Administrator of the Estate of

Robert E. Burns, deceased (hereinafter "Plaintiff"), and files this Complaint against Defendants

Fortson-Peek Company, Inc. (hereinafter "Peek" or "Peek Pavement"), Wright Brothers

Construction Company, Inc. (hereinafter "Wright Brothers"), Northwest Georgia Paving, Inc.

(hereinafter "NW GA Paving"), and Donald Wayne King (hereinafter "Defendant King")

showing this Honorable Court as follows:

### PARTIES AND SERVICE

1.

Tracy Burns is the surviving spouse of Robert E. Burns, deceased. Mr. Burns died on

May 30, 2019 as a result of a truck/motorcycle collision occurring on Georgia Highway 3 in

Gordon County, Georgia. The collision occurred in a construction / temporary traffic control

area. Plaintiff Tracy Burns is the proper party to bring a claim for the wrongful death of her husband, Mr. Robert E. Burns.

2.

On or around November 18, 2019, Plaintiff Tracy Burns was lawfully appointed to be the Administrator of the Estate of Mr. Robert E. Burns, deceased. Accordingly, she is the proper party to bring all claims on behalf of Mr. Robert E. Burns's Estate.

3.

Plaintiff submits to the jurisdiction and venue of this Court.

4.

Fortson-Peek Company, Inc. ("Peek") is a domestic for-profit corporation formed under the laws of the state of Georgia, with its principal place of business located at 6867 Mountainbrook Drive, Suite 101, Columbus, Muscogee County, Georgia 31904. Peek Pavement is in the business of performing road construction, temporary traffic control, paving, marking/striping/roadway marking obliteration projects and conducts such business within the State of Georgia and within the venue of this Court. Peek may be served with process by delivering summons and a copy of this Complaint to its registered office and Registered Agent for service of process, William R. Peek, located at 6867 Mountainbrook Drive, Suite 101, Columbus, Muscogee County, Georgia, 31904; however, by electronic mailed dated November 22, 2019, counsel for Peek Pavement has agreed to accept service for Peek Pavement.

5.

Wright Brothers Construction Company, Inc. ("Wright Brothers") is a foreign for-profit corporation formed under the laws of the state of Tennessee, with its principal place of business located at 1500 Lauderdale Memorial Highway North, Charleston, Tennessee 37310-6641.

Wright Brothers is in the business of performing road construction, temporary traffic control, paving, marking/striping/roadway marking obliteration projects and conducts such business within the State of Georgia and within the venue of this Court. Wright Brothers transacts business in Georgia, and is therefore subject to the venue of this Court in this matter pursuant to O.C.G.A. § 14-2-510 and O.C.G.A. § 9-10-31, as a joint tortfeasor. Wright Brothers may be served with process by delivering summons and a copy of this Complaint to its registered office and registered agent for service of process, CT Corporation System, located at 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805; however, by electronic mailed dated November 7, 2019 counsel for Wright Brothers has agreed to accept service for Wright Brothers.

6.

Northwest Georgia Paving, Inc. ("NW GA Paving") is a domestic for-profit corporation formed under the laws of the state of Georgia, with its principal place of business located at P.O. Box 578, Calhoun, Georgia, 30703-0578. NW GA Paving is in the business of performing road construction, temporary traffic control, striping/marking/roadway marking obliteration, and paving projects and conducts such business within the State of Georgia and within the venue of this Court. NW GA Paving is subject to venue in this Court as a joint tortfeasor. NW Paving may be served with process by delivering summons and a copy of this Complaint to its registered office and Registered Agent for service of process, Brian Land, located at 508 Riverside Parkway, Suite 100, Rome, Floyd County, Georgia, 30161.

7.

Defendant Donald Wayne King is a resident of the State of Georgia. Defendant King was driving and operating his motor vehicle on or around May 30, 2019. Defendant King may

have contributed to the collision in which Plaintiff was seriously injured. Defendant King is subject to the jurisdiction of this Court. Defendant King may be served with a Summons and Complaint, at his last known place of residence, 148 King Road, NW, Adairsville, Georgia 30103.

8.

Peek Pavement, Wright Brothers, and NW GA Paving, are collectively referred to herein as "Corporate Defendants," unless noted individually.

9.

The Corporate Defendants are vicariously liable for the negligent acts and omissions of their respective employees and/or agents, who were acting within the course and scope of their agency, employment, and duties, during all times material to this action.

## JURISDICTION AND VENUE

10.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

11.

This Court has subject matter jurisdiction over this case.

12.

Venue is proper in this Court as to the Corporate Defendants and Defendant King, as noted above.

13.

All Defendants are joint tortfeasors.

4

## BACKGROUND AND FACTS

### 14.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

### 15.

On and before May 30, 2019, the roadway on Georgia Highway 3 near the intersection of Enterprise Drive in Gordon County, Georgia was undergoing construction, maintenance, and/or alteration as a result of a contract between the State of Georgia (GDOT) and Wright Brothers. Specifically, Contract ID: B1CBA-1600665-1 ((Project Number STP00-00MS-00(007)) was executed between GDOT and Wright Brothers before May 30, 2019. Among other things, this contract set forth the scope of work to be performed and allowed Wright Brothers to hire subcontractors to complete some tasks within the scope of work. Wright Brothers was the general contractor for the referenced project and had a non-delegable duty to carry out the roadway construction and maintenance project in compliance the local, state, and federal standards and law, as well as the standards set forth in the subject contract.

### 16.

Contract B1CBA-1600665-1 provided that the work completed pursuant to the contract would be done so in compliance with the Manual on Uniform Traffic Control Devices ("MUTCD") 2009 edition and Georgia Department of Transportation standards.

### 17.

Special Provision Section 150 of the contract set forth requirements for compliance with temporary traffic control guidelines and standards. Section 150 of the contract notes that the MUTCD "shall control" the temporary traffic control plan and traffic control devices for the duration of the project.

18.

On May 30, 2019, at approximately 5:45 a.m., Mr. Robert E. Burns was lawfully driving his motorcycle south on Georgia Highway 3 ("GA 3") near the intersection of Enterprise Drive in Gordon County, Georgia. This area of roadway was then undergoing construction, paving, marking, and/or striping and/or marking obliteration by the Corporate Defendants.

19.

At that same date and time, Mr. Donald Wayne King, was operating a 1994 Chevrolet S10 pick up truck north on GA 3 near the intersection of Enterprise Drive in Gordon County, Georgia.

20.

On and before May 30, 2019, the Corporate Defendants had set up and were operating, managing, overseeing, and maintaining, a roadway paving/construction/marking zone in and around the area of GA 3 near the intersection of Enterprise Drive in Gordon County, Georgia.

21.

On and before May 30, 2019, as part of the paving/construction/marking work, Defendants altered the traffic pattern and flow of GA 3 near the intersection of Enterprise Drive in Gordon County, Georgia.

22.

On and before May 30, 2019, the Corporate Defendants employed deficient temporary traffic control measures and changed roadway striping and marking to re-route traffic and alter the way in which drivers navigated the roadway on GA 3 near the intersection of Enterprise Drive in Gordon County, Georgia.

23.

When driving north onto GA 3, Mr. King was apparently confused by the improperly placed, maintained, and designed temporary traffic controls and/or roadway markings and did not have clear direction regarding where to proceed or how to navigate the roadway safely.

24.

Therefore, Mr. King's vehicle entered the southbound, opposite lane of travel on Georgia Highway 3, within Defendants' construction and temporary traffic control zone, and collided with the motorcycle being driven by Mr. Robert E. Burns. Mr. Burns was catastrophically injured and later died as a result of the collision.

25.

As a result of the Corporate Defendants' negligence, Mr. King was unable to properly and safely navigate the construction area and temporary traffic control zone, resulting in the collision at issue.

26.

Defendant King may also have been somehow negligent, depending upon the information revealed in discovery.

**AFFIDAVIT OF AN EXPERT COMPETENT TO TESTIFY**

27.

In support of Plaintiff's allegations of professional negligence and malpractice of the Corporate Defendants (and their employees and agents), pursuant to O.C.G.A. § 9-11-9.1, Plaintiff files with her Complaint the Affidavit of an expert competent to testify, that of Peter S. Parsonson, PhD, PE. The Affidavit and CV of Dr. Parsonson are designated as Exhibit "A" and

the exhibit attached thereto (his CV) are hereby incorporated by reference as if fully set forth herein. This Affidavit fully satisfies the requirements of O.C.G.A. §§ 9-11-9.1 and 24-9-67.1.

## COUNT I
## GENERAL NEGLIGENCE OF THE CORPORATE DEFENDANTS

28.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

29

The Corporate Defendants were in violation of, at least: Section 107 (Legal Regulations and Responsibility to the Public) and Section 150 (Traffic Control) of the Contract with Defendant GDOT and the State of Georgia (Contract B1CBA-1600665-1; Project No. 662510), as well as the Manual on Uniform Traffic Control Devices (MUTCD) 2009 Edition.

30.

The Corporate Defendants breached their duty to maintain the subject roadway, temporary traffic control, and roadway markings in a safe condition due to, among other things: improper layout of the roadway, improper temporary traffic control, improper placing and obliteration of roadway markings, improper channelization of vehicles, and improper lane closing and re-opening around GA 3 near the intersection of Enterprise Drive on and before May 30 2019.

31.

The acts and omissions of the Corporate Defendants were a cause of the fatal collision on May 30, 2019, referenced herein.

32.

The Corporate Defendants' conduct was so egregious that it rises to the level of conscious disregard for the safety and well-being of the motoring public and constitutes willful

8

and wanton conduct as defined under O.C.G.A. § 51-12-5.1.  Such conduct warrants the imposition of punitive damages.

**COUNT II**
**LIABILITY OF DEFENDANT FORTSON-PEEK COMPANY, INC. -**
**NEGLIGENCE AND/OR PROFESSIONAL NEGLIGENCE**

33.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

34.

Plaintiff does not admit or acknowledge that the allegations raised in this Complaint should or must be considered those sounding in professional negligence or malpractice, such that an Affidavit is required pursuant to O.C.G.A. § 9-11-9.1. However, in an abundance of caution and to the extent necessary, Plaintiff attaches hereto and incorporates by reference the Affidavit and CV of Peter S. Parsonson, PhD, P.E. setting forth at least one negligent act and omission of Defendant Peek Pavement as presently known.

35.

Defendant Peek was under a duty (Contract ID B1CBA-1600665-1) to maintain the subject roadway, temporary traffic control, and roadway markings described within this Complaint, in a reasonably safe condition for the protection of the motoring public.

36.

Defendant Peek failed to maintain the subject roadway, temporary traffic control, and roadway markings in a reasonably safe condition.

37.

Defendant Peek breached its duty to maintain the subject roadway, temporary traffic control, and roadway markings in a safe condition due to, among other things: improper layout

of the roadway, improper temporary traffic control, improper placing and obliteration of roadway markings, improper channelization of vehicles, and improper lane closing and re-opening around GA 3 near the intersection of Enterprise Drive. Defendant Peek was in violation of, at least: Section 107 (Legal Regulations and Responsibility to the Public) and Section 150 (Traffic Control) of the Contract with Defendant GDOT and the State of Georgia (Contract B1CBA-1600665-1; Project No. 662510), as well as the Manual on Uniform Traffic Control Devices (MUTCD) 2009 Edition, and other industry standards.

38.

The acts and omissions of Defendant Peek were a cause of the fatal collision on May 30, 2019, referenced herein.

39.

Defendant Peek's conduct was so egregious that it rises to the level of conscious disregard for the safety and well-being of the motoring public and constitutes willful and wanton conduct as defined under O.C.G.A. § 51-12-5.1. Such conduct warrants the imposition of punitive damages.

## COUNT III
## LIABILITY OF DEFENDANT
## WRIGHT BROTHERS CONSTRUCTION COMPANY, INC. -
## NEGLIGENCE AND/OR PROFESSIONAL NEGLIGENCE

40.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

41.

Plaintiff does not admit or acknowledge that the allegations raised in this Complaint should or must be considered those sounding in professional negligence or malpractice, such that an Affidavit is required pursuant to O.C.G.A. § 9-11-9.1. However, in an abundance of caution

and to the extent necessary, Plaintiff attaches hereto and incorporates by reference the Affidavit and CV of Peter S. Parsonson, PhD, P.E. setting forth at least one negligent act and omission of Defendant Wright Brothers as presently known.

42.

Defendant Wright Brothers was under a duty (Contract ID B1CBA-1600665-1) to maintain the project from the beginning of construction through final acceptance and to maintain the subject roadway, describe within this Complaint, in a reasonably safe condition for the protection of the motoring public.

43.

Defendant Wright Brothers failed to maintain the subject roadway in a reasonably safe condition.

44.

Defendant Wright Brothers breached its duty to maintain the subject roadway, temporary traffic control, and roadway markings in a safe condition due to, among other things: improper layout of the roadway, improper temporary traffic control, improper placing and obliteration of roadway markings, improper channelization of vehicles, and improper lane closing and re-opening around GA 3 near the intersection of Enterprise Drive. Defendant Wright Brothers was in violation of, at least: Section 107 (Legal Regulations and Responsibility to the Public) and Section 150 (Traffic Control) of the Contract with Defendant GDOT and the State of Georgia (Contract B1CBA-1600665-1; Project No. 662510), as well as the Manual on Uniform Traffic Control Devices (MUTCD) 2009 Edition, and other industry standards.

45.

The acts and omission of Defendant Wright Brothers were a cause of the fatal collision on May 30, 2019, referenced herein.

46.

Defendant Wright Brothers' conduct was so egregious that it rises to the level of conscious disregard for the safety and well-being of the motoring public and constitutes willful and wanton conduct as defined under O.C.G.A. § 51-12-5.1. Such conduct warrants the imposition of punitive damages.

## COUNT IV
## LIABILITY OF DEFENDANT NORTHWEST GEORGIA PAVING, INC. - NEGLIGENCE AND/OR PROFESSIONAL NEGLIGENCE

47.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

48.

Plaintiff does not admit or acknowledge that the allegations raised in this Complaint should or must be considered those sounding in professional negligence or malpractice, such that an Affidavit is required pursuant to O.C.G.A. § 9-11-9.1. However, in an abundance of caution and to the extent necessary, Plaintiff attaches hereto and incorporates by reference the Affidavit and CV of Peter S. Parsonson, PhD, P.E. setting forth at least one negligent act and omission of Defendant Northwest GA Paving as presently known.

49.

Defendant NW GA Paving was under a duty (Contract ID B1CBA-1600665-1) to maintain the subject roadway, temporary traffic control, and roadway markings described within this Complaint, in a reasonably safe condition for the protection of the motoring public.

50.

Defendant NW GA Paving failed to maintain the subject roadway in a reasonably safe condition.

51.

Defendant NW GA Paving breached its duty to maintain the subject roadway, temporary traffic control, and roadway markings in a safe condition due to, among other things: improper layout of the roadway, improper temporary traffic control, improper placing and obliteration of roadway markings, improper channelization of vehicles, and improper lane closing and re-opening around GA 3 near the intersection of Enterprise Drive. Defendant NW GA Paving was in violation of, at least: Section 107 (Legal Regulations and Responsibility to the Public) and Section 150 (Traffic Control) of the Contract with Defendant GDOT and the State of Georgia (Contract B1CBA-1600665-1; Project No. 662510), as well as the Manual on Uniform Traffic Control Devices (MUTCD) 2009 Edition, and other industry standards.

52.

The acts and omission of Defendant NW GA Paving were a cause of the fatal collision on May 30, 2019, referenced herein.

53.

Defendant NW GA Paving's conduct was so egregious that it rises to the level of conscious disregard for the safety and well-being of the motoring public and constitutes willful and wanton conduct as defined under O.C.G.A. § 51-12-5.1. Such conduct warrants the imposition of punitive damages.

## COUNT V
## VICARIOUS LIABILITY OF CORPORATE DEFENDANTS

54.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

55.

At all times relevant to this action, the managers, assistant mangers, supervisors, safety supervisors, agents, and employees were acting within the course and scope of their employment with Defendants Peek, Wright Brothers, and/or NW GA Paving.

56.

At all times relevant to this action, the managers, assistant mangers, supervisors, safety supervisors, agents, and employees failed to properly carry out their duties.

57.

Therefore, Defendants are responsible for the negligence of the above-described individuals under the doctrine of *respondeat superior*, agency, or apparent agency.

## COUNT VI
## NEGLIGENCE OF DONALD KING

58.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

59.

Donald King may have been neglient in failing to control his vehicle, depending upon information revealed in discovery.

60.

If Donald King's negligence contributed to the collision at issue he may be liable to the Plaintiff.

14

## COUNT VII
## DAMAGES

61.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

62.

The negligent acts and omissions of all Defendants and negligence, professional negligence, and violations of the standard of care by the Corporate Defendants as set forth above caused or contributed to the collision at issue on May 30, 2019 and to Mr. Burns's injuries and death.

63.

Mr. Burns died as a result of the injuries that he received in the collision discussed herein.

64.

Plaintiff seeks to recover all allowable damages under Georgia's Wrongful Death Act against all Defendants, which include the full value of the life of Mr. Burns, against all Defendants.

65.

Plaintiff seeks all Estate damages against all Defendants, including, at least, the shock, pain, and suffering experienced by Mr. Burns prior to his death, funeral expenses, and burial expenses.  As to Defendants Peek, Wright Brothers, and NW GA Paving, the Estate of Mr. Burns also seeks punitive damages.

## COUNT VIII– PUNITIVE DAMAGES

66.

Plaintiff incorporates by reference all of the previous allegations in this Complaint.

67.

Defendant Peek's conduct as set forth in Count II, above, was reckless and demonstrates a conscious indifference to the consequences of its actions.

68.

Defendant Wright Brothers' conduct as set forth in Count III, above, was reckless and demonstrates a conscious indifference to the consequences of its actions.

69.

Defendant NW GA Paving's conduct as set forth in Count IV, above, was reckless and demonstrates a conscious indifference to the consequences of its actions.

70.

Accordingly, Plaintiff is entitled to punitive damages against Defendants Peek Pavement, Wright Brothers, and NW GA Paving pursuant to O.C.G.A. § 51-12-5.1.

**WHEREFORE**, Plaintiff prays that she has a trial by jury on all issues and judgment against all Defendants as follows:

a.    That Plaintiff, as Surviving Spouse of Robert E. Burns, deceased, recovers for the full value of the life of Robert E. Burns in an amount to be determined by the enlightened conscience of a jury;

b.    That Plaintiff, as Administrator of the Estate of Robert E. Burns, recovers for funeral and burial expenses in an amount to be proven at trial;

c.    That Plaintiff, as Administrator of the Estate of Robert E. Burns, recovers for the shock and mental and physical pain and suffering endured by Robert E. Burns before his death in an amount to be determined by the enlightened conscience of a jury;

d.    That Plaintiff recovers punitive damages against the Corporate Defendants in an amount to be determined by the enlightened conscience of a jury; and,

e.    That Plaintiff recovers such other and further relief as is just and proper.

*[Signature page follows]*

17

THIS 12TH DAY OF DECEMBER, 2019.

RESPECTFULLY SUBMITTED,

LAW OFFICES OF ANDREW E. GOLDNER, LLC

/S/ ANDREW E. GOLDNER

_____

ANDREW E. GOLDNER
GEORGIA STATE BAR NO. 297329

1040 CROWN POINTE PARKWAY
SUITE 800
ATLANTA, GA 30338
(404)869-1580 OFFICE
(404)393-1099 FAX
ANDY@GOLDNERLEGAL.COM

STEIN & CARON LAW GROUP

/S/ BRIAN T. CARON

_____

BRIAN T. CARON
GEORGIA STATE BAR NO. 111073

3715 NORTHSIDE PARKWAY
SUITE 3-650
ATLANTA, GA 30327
404-522-1000 OFFICE
404-881-1888 FAX
BRIAN.CARON@STEINFIRM.COM          *ATTORNEYS FOR PLAINTIFFS*

# AMENDED EXHIBIT A

**AFFIDAVIT OF PETER PARSONSON, PhD., P.E.**

STATE OF GEORGIA

COUNTY OF _Fulton_

      Before me, the undersigned official duly authorized to administer oaths, appeared Peter Parsonson, PhD, P.E. personally known to me, who, upon being duly sworn, deposes and says as follows:

1.

      I am over 21 years of age, am mentally competent, suffer from no legal disability, and make this Affidavit under oath based on my personal knowledge.

2.

      I am a Professor Emeritus of Civil & Environmental Engineering at the Georgia Institute of Technology in Atlanta and the President of Parsonson & Associates, Inc. I am licensed as a Professional Engineer in several states, including Georgia, and including California as a Traffic Engineer. I am a Fellow of the National Academy of Forensic Engineers; Board-Certified Diplomate of the Council of Engineering Specialty Boards; Life Member, Institute of Transportation Engineers; Member, National Society of Professional Engineers; Senior Member, American Society of Highway Engineers; and, Associate Member, International Municipal Signal Association.

3.

      I earned a Bachelor of Science in Civil Engineering degree from the Massachusetts Institute of Technology in 1956, an MSCE degree from MIT in 1959, and a PhD in CE, specializing in Transportation Engineering, from North Carolina State University at Raleigh in 1966.

I was a full-time Professor at Georgia Tech from 1970 to 2000, and during those years taught courses in traffic engineering and highway design to undergraduate and graduate students.

4.

My qualifications in Temporary Traffic Control include but are not limited to a 1998 certificate from the American Traffic Safety Services Association (ATSSA) for the successful completion (including passing an examination) of a 20-hour course titled "Training Course for Worksite Traffic-Control Supervisors." Because three new editions of the MUTCD have been issued since 1998, I repeated that course in 2006 and again in 2015. I also have decades of study of the MUTCD and decades of teaching and applying Temporary Traffic Control principles, such as the ones discussed below.

5.

A true copy of my curriculum vitae is attached hereto as Exhibit "A" and fully incorporated by reference.

6.

I am familiar with traffic engineering, roadway construction, and roadway maintenance (including but not limited to paving, repaving, marking, marking obliteration, channelization of vehicles, traffic control, and temporary traffic control) standards of care, including all aspects of worksite traffic control, applicable on roadways and highways in Georgia at the time of the subject incident and at the time of the planning and performance of the work at issue. I have actual professional knowledge of the standards of care applicable to engineers and engineering as they relate to the facts discussed herein. This includes but is not limited to standards of care applicable at the time of the events discussed herein related to: lane closures and shifts, channelization of vehicles in and around a roadway construction zone, temporary traffic control, the use of traffic

control personnel, signage, roadway marking, markings obliteration, and, applicable devices on the project at issue.

7.

I have reviewed records and documents produced by and/or related to the Georgia Department of Transportation ("GDOT"), Wright Brothers Construction Company, Inc., and Georgia State Patrol, with regard to the roadway construction project along GA 3 and the automobile/motorcycle collision on May 30, 2019, which resulted in the injuries to and the death of Robert Burns and which was the result of deficient traffic control/safety measures on the project. These records and documents include, but are not limited to: the construction documents for Contract B1CBA-1600665-1 ((Project Number STP00-00MS-00(007)) including without limitation, contract documents between Wright Brothers Construction Company, Inc. and the Georgia Department of Transportation and various correspondence, invoices, work orders, engineering request forms, payment request forms, emails, photographs, videos, diagrams, drawings, and other documents. I have also reviewed the vehicle crash report and photographs concerning the May 30, 2019 collision that resulted in the death of Robert Burns.

My understanding is that the Georgia State Patrol's computer server was the subject of a computer virus attack and/or "hack," which has resulted in some of the information related to this matter being, at least temporarily, unavailable. As such, I reserve the right to modify, withdraw, or add to my opinions stated herein when and if the subject information becomes available; however, the above-noted material that I have been able to review gives me a sufficient basis with which to offer opinions in this matter at this time.

8.

Based upon my education, training, and experience, I have knowledge of the generally accepted engineering, maintenance, and design standards for roadway construction/maintenance projects, including traffic control measures related to such projects. These standards include the MUTCD, GDOT Standards, GDOT Specifications, other industry standards, and the generally accepted engineering, construction, maintenance, and design standards guiding traffic operations for projects such as the one at issue. I also have knowledge of the generally accepted roadway engineering, construction, marking/striping, channelization, lane closure and lane reopening, maintenance, and design standards of care for the application of those principles. In forming my opinions in this case, I have relied upon facts and data of a type reasonably relied upon by experts in these fields, and applied generally accepted engineering principles and methods.

9.

In reaching the opinions stated herein, I am relying on the above-listed documents and records, other relevant documents and records not specifically referenced herein, my investigation, and my education, training, and experience. The materials and information I have relied upon are of a type reasonably relied upon by experts in my field in forming opinions related to the type of subject matter at issue.

10.

I have reached the opinions based upon reliable principles and methods of engineering and analysis, applied reliably to the facts herein, all in my capacity as a Licensed Professional Engineer and Licensed Traffic Engineer. I have applied, among other things, the principles that are ordinarily and customarily accepted principles of transportation engineering and that are consistent

with and supported by my education, training, and experience. All of these opinions are to a reasonable degree of engineering certainty.

11.

My professional opinions are based on the aforementioned and the facts noted herein. Prior to and on May 30, 2019, Wright Brothers Construction Company, Inc. and subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., were carrying out a road construction project along GA 3 near Enterprise Drive in Gordon County, Georgia. Wright Brothers Construction Company, Inc. served as a general contractor on the project.

12.

As a part of the project, Wright Brothers Construction Company, Inc. and subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., altered the roadway along GA 3 near Enterprise Drive in Gordon County, Georgia. Specifically, on and before May 29-30, 2019 lanes were closed, re-routed, and re-opened in this area.

13.

At all relevant times herein, Wright Brothers Construction Company, Inc. and/or subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., were responsible for the placement of and monitoring of traffic control devices, traffic control personnel, signage, and alerts with respect to the work at issue, for designing, implementing, and maintaining the traffic control plan during the project, and for properly placing and removing roadway markings and properly closing and reopening lanes.

14.

Wright Brothers Construction Company, Inc. and/or subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., were required to ensure that the work done, including traffic control, temporary traffic control, vehicle channelization, lane closure and reopening, and roadway marking and obliteration were done in accordance with the law, contract documents, state and industry standards, and the exercise of due care.

15.

Wright Brothers Construction Company, Inc. and/or subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., failed to design and implement a proper traffic control plan, and failed to deploy sufficient and properly-placed signage, alerts, cautionary barrels, personnel, and other traffic control devices, and failed to properly mark and obliterate roadway markings and properly close and reopen lanes, so as to reasonably and properly notify and guide motorists on and around GA 3 near Enterprise Drive on and before May 30, 2019. The design of the traffic control plan and the operation of the traffic control by Wright Brothers Construction Company, Inc. and subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., were not in substantial compliance with generally accepted engineering and design standards in effect at the time of the preparation of the traffic control plan and in effect at the time of the subject incident. Both the traffic control plan for the subject project and the operation of the traffic control by Wright Brothers Construction Company, Inc. and/or subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., at time of the automobile collision at issue departed from the applicable engineering standard of care.

16.

6

The improper and deficient traffic control measures deployed by Wright Brothers Construction Company, Inc. and/or subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., created a dangerous and hazardous condition that proximately caused the fatal automobile collision at issue. Specifically, among other hazards, the failures of Wright Brothers Construction Company, Inc. and/or subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., resulted in motorists traveling on GA 3 near Enterprise Drive in Gordon County, Georgia on May 29 – 30, 2019 having difficulty determining which lane was the proper lane of travel, both northbound and southbound.

17.

It is my professional opinion to a reasonable degree of engineering certainty that the design of the traffic control plan and the execution of the traffic control by Wright Brothers Construction Company, Inc. and/or subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc., and their employees and agents, failed to substantially comply with the generally accepted roadway construction, maintenance, and traffic control engineering standards applicable at the time of the work and incident at issue, and failed to meet the requisite reasonable degree of skill and care, and that these failures caused the collision that resulted in injuries to and the death of Robert Burns. My opinions are based, in part, on the following acts and omissions of Wright Brothers Construction Company, Inc. and subcontractors they hired, including Northwest Georgia Paving, Inc. and Fortson-Peek Company, Inc.:

    (a) Failure to design and implement a proper traffic control plan for the subject project/area in and around GA 3 near Enterprise Drive in accordance with applicable engineering, contractual, and industry standards;

(b) Failure to ensure that contractors working in the area designed and implemented a proper traffic control plan in accordance with applicable engineering, contractual, and industry standards;

(c) Failure to properly and sufficiently warn and notify drivers on GA 3 near Enterprise Drive in Gordon County, Georgia on and before May 29-30, 2019 of the subject roadway work and lane closures and re-opening so as to afford drivers sufficient notice and time to react to sudden and unexpected changing road and traffic conditions and to properly identify the correct lanes of travel;

(d) Failure to adequately and properly place sufficient warning signs, traffic control devices such as barrels, and traffic control signage to alert motorists of the change in traffic patterns and lane changes and properly channel traffic;

(e) Failure to properly place and obliterate roadway markings as required by the subject contract, the MUTCD, and state and industry standards; specifically, failure to comply with the provisions of MUTD Section 6(F).77 Pavement Marking relating to the Defendants placement, removal, and obliteration prior to the crash at issue;

(f) Failure to properly supervise and monitor the placement of and function of signage, traffic control devices, and traffic control personnel;

(g) Failure to utilize the proper safety devices, safety personnel, and safety procedures to adequately warn the motoring public of the hazardous conditions around and on the roadway near the site of the subject collision;

(h) Failure to inspect and ensure that the roadway in the area in question in the Complaint was free of hazards to motorists, including proper and sufficient barrel channelization and lane markings;

(i) Failure to comply with the MUTCD and state and industry standards as they relate to, at least, traffic signage, traffic control, channelization, and roadway marking obliteration;

(j) Failure to follow rules and standards set forth and incorporated in the subject project documents;

(k) Failure to recognize and correct the dangerous condition created when cars attempted to drive near the scene of the subject collision as a result of improper lane markings, failure to obliterate old roadway markings, and improper lane channelization;

(l) Failure to properly identify and remedy the existing hazards to the traveling public which should have been known to Defendants; and,

(m) Failure to take appropriate safety measures when the deficiencies and dangers first became known or should have become known.

18.

A motor vehicle collision and, relatedly, the death of Robert Burns was foreseeable to Defendants in light of the foregoing acts, omissions, and deficiencies.

19.

It is not the purpose of this Affidavit to set forth each and every opinion or criticism which I have or may have in the future based upon further review and information, but rather to be in compliance with O.C.G.A. § 9-11-9.1 for use in filing a Complaint in this action and for any and all other purposes allowed by law. I understand that only one deviation from the standard of care needs to be identified for purposes of this Affidavit in filing a Complaint, and that has been done in this Affidavit. I express all opinions in this Affidavit to a reasonable degree of certainty in the field of engineering as discussed and applied herein.

20.

My opinions as expressed in this Affidavit are not meant to represent the entirety of the opinions I may have in this matter. I reserve the right to revise and/or supplement my opinions and findings based upon the results of my ongoing analysis and/or as a result of information that becomes available to me and/or in response to additional submissions, if any, by any party to this litigation.

This ___12th___ day of December, 2019.

Peter Parsonson, PhD, P.E.

Sworn to and subscribed before me:

This ___12th___ Day of December, 2019.

Notary Public

JANE ATKINSON
NOTARY
EXPIRES
GEORGIA
March 8, 2022
PUBLIC
FULTON COUNTY

10

September, 2018

Biographical Sketch
## PETER S. PARSONSON, PhD, PE

### Address
Consulting and home address: 105 Mark Trail NW, Atlanta, GA 30328-2102
Tel.: 404-966-2244;  Fax: 404-255-6229 (home/office fax)

Email: parsonsonp@bellsouth.net

### Education
- PhD, Civil Engineering, North Carolina State University, 1966
- MS, Civil Engineering, Massachusetts Institute of Technology, 1959
- BS, Civil Engineering, Massachusetts Institute of Technology, 1956

### Employment History
- President, Parsonson & Associates, Inc., Atlanta, Georgia     1976 -
- Professor Emeritus, School of Civil & Environmental Eng.     June, 2000 -
  Georgia Institute of Technology
- Professor, School of Civil & Environmental Engineering     1982-2000
  Leader of the Transportation Systems Group of 7 faculty     1995-1999
  Georgia Institute of Technology
- Associate Professor, School of Civil Engineering     1970-82
  Georgia Institute of Technology
- Assistant Professor of Civil Engineering     1966-70
  University of South Carolina
- Graduate Research Assistant and Ford Foundation Fellow     1964-66
  North Carolina State University at Raleigh
- Civil Engineer     1961-64
  Tippetts-Abbett-McCarthy-Stratton, New York,
  primarily in Buenos Aires office
- Civil Engineer     1959-61
  *Ingeniería de Suelos, S.A.*, Caracas, Venezuela

### Professional Engineering Licensure
- Licensed as a PE in Alabama, Florida, Georgia, South Carolina and Tennessee, and in California in traffic engineering. Eligible for expedited licensure in other states by comity, as he holds a Record (No. 24137) issued by the National Council of Examiners for Engineering and Surveying (NCEES)
- Fellow of the National Academy of Forensic Engineers (NAFE), and Board-Certified Diplomate of the Council of Engineering Specialty Boards (CESB) by NAFE

## Professional Organizations
- Life Member, Institute of Transportation Engineers (ITE).
- Member, National Society of Professional Engineers (NSPE)
- Fellow, National Academy of Forensic Engineers (NAFE), a chartered subgroup of the NSPE
- Senior Member, American Society of Highway Engineers (ASHE)
- Associate Member, International Municipal Signal Association (IMSA)

## Areas of Expertise
Traffic engineering and highway design, construction, maintenance and operation, including safety aspects and expert testimony involving litigation.  Crash reconstruction.

## Sponsored Projects Since 1993
- "Expected Values for Accident Analyses at Intersections," sponsored by the Georgia Governor's Office of Highway Safety, Project, 1993, $16,800.
- "Development of Prototype Adverse Visibility Warning and Control Systems for Operational Evaluations," subcontract from Georgia Tech Research Institute, sponsored by the Georgia DOT, 1993 to 1997, $55,900.
- "Expected Values for Accident Analyses at Intersections in Georgia Cities Other than the Atlanta Area," sponsored by the Georgia DOT, 1994, $34,169.
- "Development and Presentation of Short Courses Titled 'Expected Values for Accident Analyses at Intersections,'" sponsored by the Georgia DOT, 1997, $15,000.
- "Improving Operational Safety on Local Roads and Streets," development of course notebook, visual aids, and presentation of a one-day course in each District, sponsored by the Georgia DOT, 1998 to 2000, $20,000.
- Contract between the Georgia DOT and Parsonson & Associates, Inc. for the preparation and presentation of short courses on traffic engineering to Georgia municipal and county employees during 2001, under the Department's Local Technical Assistance program (LTAP). Course titles are "Traffic Signalization at Local Intersections," "The New Edition of the Manual on Uniform Traffic Control Devices (MUTCD 2000)," "Expected Values for Accident Analyses at Intersections," "Improving Operational Safety on Local Roads and Streets," and "Improving Sight Distance on Local Roads and Streets," $42,000.
- Contract between Day Wilburn Associates (PBS&J) and Parsonson & Associates, Inc. during 2000 to determine the improvement potential of a high-speed, signalized intersection on the Cuthbert Bypass on U.S. 27 south of Columbus, GA. Dr. Parsonson visited the location and wrote reports. $3,000. He also served as a member of the Federal Highway Administration's team to conduct a Road Safety Audit Review of that intersection. In 2002 he was an expert witness for the GDOT in the Hill lawsuit.
- Contract between Post, Buckley, Schuh and Jernigan (PBS&J) and Parsonson & Associates, Inc. for the preparation and presentation of short courses on traffic-signal timing optimization and remote management to personnel of the City of Macon-Bibb County Traffic Engineering Dept. and the Georgia DOT during 2001-2, as part of the implementation of their Advanced Transportation Management System, $6,000.
- Contract between Day Wilburn Associates (DWA) and Parsonson & Associates, Inc. for work on a Georgia DOT project titled "Design Standards for Multi-Point Detec-

tion on High-Speed Signalized Approaches to Minimize the Option-Zone Exposure",
2003, $15,000.

- Contract between the South Carolina DOT and Georgia Tech for Parsonson & Associates and Day Wilburn Associates (DWA) to present a three-day version of the course "Signalized Intersections and Systems I" to 40 SCDOT personnel in Columbia, SC, May 20-22, 2003, $16,000. Dr. Parsonson also presented two courses on signalization to the SCDOT in Columbia, through Georgia Tech, in 1995 and 1996.

## Honors

- Recipient of the Wilbur S. Smith Distinguished Transportation Educator Award from the Institute of Transportation Engineers at its 2013 Annual Meeting in Boston, MA, Aug. 7, 2013
- Recipient of the Excellence in Transportation Engineering Education Award from the Southern District, Institute of Transportation Engineers, 2011
- Recipient of an Award of Special Recognition from the Georgia Section, Institute of Transportation Engineers, 2002, "for his lifetime contribution to excellence in education."
- Invited Professor at the *Universidad de Los Andes*, *Facultad de Ingeniería*, *Departamento de Vías*, Mérida, Venezuela, June 26-30, 2000 and November 26-December 6, 2001.
- Invited lecturer on Intelligent Transportation Systems for Intercity Travel, guest of the Jiangsu and Hebei Provinces in China, and the Southeast University, in Nanjing, 17 days in August, 1999.
- Recipient of the Karl Bevins Award from the Georgia Section, Institute of Transportation Engineers, 1992, for his work in traffic operations engineering.
- Recipient of the Herman J. Hoose Distinguished Service Award from the Southern District, Institute of Transportation Engineers, 1983
- Recipient of the Marble J. Hensley Outstanding Individual Activity Award from the Southern District, Institute of Transportation Engineers, 1974
- Listed in *Who's Who in Engineering* published by the American Association of Engineering Societies, *International Who's Who in Engineering* published by the International Biographical Centre in Cambridge, England

## Courses Taught Prior to Retirement at Georgia Tech
   Degree Courses
- CEE 4600  Transportation Planning, Design and Operations
- CEE 4610  Multimodal Planning, Design and Operations
- CEE 6603  Traffic Engineering
- CEE 6604  Geometric Design of Transportation Facilities
- CEE 6631  Signalized Intersections and Networks
   Short Courses through Continuing Education
- Signalized Intersections and Systems I, five days every March since 1971
- Signalized Intersections and Systems II, five days every August since 1971

## Courses Taught in Retirement from 2000 to 2004 at Georgia Tech
- CEE 6603, CEE 6631 and the two short courses

## Consulting

In his consulting activities, Dr. Parsonson does not act as a representative of Georgia Tech.

- Dr. Parsonson was frequently called on to teach seminars and short courses throughout the hemisphere, in English or Spanish. From 1997 to 2001 he lectured twice a year for three days in Caracas, Venezuela on selected topics in traffic engineering. The participants numbered 30 and were selected from throughout the country to take a six-month, full-time course in transportation engineering and planning. The program was funded under a World Bank loan in 1995 and was sponsored by the government agency Fundación Fondo Nacional de Transporte Urbano (FONTUR) and was administered by contractors including Booz·Allen & Hamilton of Mexico City and later Cal y Mayor y Asociados of Mexico City.

- As a consultant he has prepared special reports and book chapters, including the following:
  - *Traffic Detector Handbook*, Federal Highway Administration, Offices of Research, Development and Technology, with A. deLaski, 1985.
  - *Management of Traffic Signal Maintenance*, Synthesis of Highway Practice 114, National Cooperative Highway Research Program, Transportation Research Board, Washington, D.C., 1984.
  - "Computer Applications in Highway Engineering," Chapter 7 of *Highway Engineering*, by Wright and Paquette, Fifth Ed., Wiley, with J. Hibbard, 1987.
  - *Signal Timing Improvement Practices*, Synthesis of Highway Practice 172, National Cooperative Highway Research Program, Transportation Research Board, Washington, D.C.,1992.
  - "Traffic Control Devices--Signals," Chapter 6 of *The Traffic Safety Toolbox*, published by the Institute of Transportation Engineers, Washington, D.C. 1993. The Second Edition, with Dr. Parsonson's updated chapter, was published in 1999.
  - "Traffic Engineering," Chapter 12 of *Highway Engineering*, by Paul H. Wright, Sixth Ed., John Wiley & Sons, New York, 1995.
  - "Part 4 – Highway Traffic Signals" and "Part 7 – School Areas" of *Roadway Through the Millennium MUTCD*," by A.C. Burnham, Jr., R.A. Luettich, P.S. Parsonson and B.S. Abrams, Lawyers & Judges Publishing Co., Inc., Tucson, AZ, 2001.

- From 1973 to 1988 he was a consultant to the City of Atlanta, performing field studies and office analyses to evaluate the effectiveness of the City's Computerized Traffic Control System in reducing fuel consumption, pollutant emission, vehicle operating cost, motorist time cost, maintenance costs, and crashes.

- From 1985 to 1998 he was a consultant to the United States Department of Commerce, National Institute of Standards and Technology, Office of Technology Innovation, Gaithers- burg, Maryland. He evaluated inventions purporting to save energy in highway transport, to see if they appeared technically sound and commercially promising and therefore deserving of Federal seed money.

- In 2009 he served as an unpaid consultant to the Georgia DOT on traffic-signal matters.

- **Litigation Consulting** - He also serves as an expert witness in litigation involving personal injury and wrongful death due to collisions on streets and highways, and private roads and parking areas open to public travel, testifying in the areas of design, construction, operation and maintenance. Since 1973 he has provided expert opinion in litigation involving negligence in highway design, construction, maintenance practices, and operation using signs, signals and markings, in over 445 completed cases in 26 states and the District of Columbia. Fifty-three percent of those were for plaintiffs and 47 percent for defendants. He has been qualified many times in courts in a number of states in the areas of highway engineering, traffic engineering, and crash reconstruction. His forensic-engineering specialties include crash investigation and reconstruction services, engineering interpretation of contracts and standards, and explanation to juries of complex concepts in technical traffic engineering, including the operation of traffic-signal-control equipment.

## Certificates of Training and Participation

- "Positive Guidance in Traffic Control," satisfactory completion of 24 hours of training by the Federal Highway Administration in Dover, Delaware, July 17-19, 1979
- "Design and Operation of Work Zone Traffic Control," satisfactory completion of 8 hours of training by the Federal Highway Administration, Forest Park, Georgia, October 18, 1990
- "Accident Reconstruction for Traffic Engineers Workshop," successful completion of 34 hours of training (including passing an exam) by Northwestern University's Traffic Institute, Evanston, Illinois, February 10-14, 1997
- "Measuring at the Scenes of Traffic Accidents," successful completion of independent study program (including passing an exam) by Northwestern University's Traffic Institute, Evanston, Illinois, October, 1997
- "Training Course for Worksite Traffic Control Supervisors," satisfactory completion of 20 hours of instruction (including passing an exam) by The American Traffic Safety Services Association (ATSSA), Fort Lauderdale, Florida, February 3-5, 1998
- "Older Drivers Highway Design," satisfactory completion of 5 hours of training by the Federal Highway Administration, Augusta, Georgia, August 29, 2000
- "Subgrade, Base and Paving," satisfactory completion of 6 hours of training by the Georgia DOT, Barrow County, March 27, 2001
- "MUTCD Millennium Edition 2000," certificate of appreciation for participating in its development, presented by the National Committee on Uniform Traffic Control Devices (NCUTCD), June 20, 2001
- Letter of appreciation from the Federal Highway Administration for participating in the development of the Millennium Edition of the Manual on Uniform Traffic Control Devices, October 22, 2001
- "Road Safety Audit Workshop," completion of 12 hours of training by the Synectics company, at the offices of Street Smarts in Atlanta, Georgia, February 27-28, 2002
- "Human Factors for Transportation Engineers," satisfactory completion of 6 hours of training by the Federal Highway Administration, Macon, Georgia, March 19, 2002
- "2010ECL Signal Monitor Training Seminar" completion of 3 hours of training by Eberle Design Incorporated (EDI) for the Georgia DOT, Macon, Georgia, October 9, 2002

- "New Approaches to Highway Safety Analysis," satisfactory completion of 20 hours of training by the Federal Highway Administration, Atlanta, Georgia, February 3-5, 2004
- "Training Course for Worksite Traffic Control Supervisors," satisfactory completion of 16 hours of instruction (including passing an exam) by The American Traffic Safety Services Association (ATSSA), Nashville, Tennessee, May 31-June 1, 2006
- "Planned Special Events Traffic Management," "Work Zone ITS 2.0" and "Practices to Improve the Safety of Mobile and Short Duration Maintenance Operations," three 1.5-hour workshops, 0.45 CEUs awarded, ATSSA's 37th Annual Convention and Traffic Expo, San Antonio, Texas, January 29-30, 2007.
- "Roadside Safety Design," satisfactory completion of 18 hours of instruction (including passing an exam) by the Federal Highway Administration, National Highway Institute, Salem, Virginia, August 28-30, 2007.
- "Nighttime Traffic Control for Work Zones," satisfactory completion of 8 hours of instruction (including passing an exam) by ATSSA, Kissimmee, Florida, February 4, 2008.
- "Safety Effects of Highway Design," satisfactory completion of 12 hrs. of instruction by the Federal Highway Administration's Resource Center, Macon, Georgia, September 4-5, 2008.
- "Flexible-Pavement Failures," satisfactory completion of 2 hours of instruction (including passing an exam). Course author is Gerry Traverso, PE, PMP. Course meets the Florida Board of P.E.'s requirements and was administered by SunCam, Inc. on August 15, 2009.
- "Identification and Treatment of High-Hazard Locations," attended 19 hours of instruction by Northwestern University Center for Public Safety, Evanston, Illinois, Oct. 13-15, 2009.
- "Flagger-Instructor Training," under an FHWA grant, satisfactory completion of 15 hours of instruction (including passing an exam) by ATSSA, Atlanta, Georgia, March 25-26, 2010. Dr. Parsonson is a Certified Trainer, to train and certify Flaggers until 3/26/2014.
- "ADA Standards for Accessible Design," 8-hour online interactive course by Professionals Publishing Group d/b/a PDHdirect.com, July 19, 2011.
- "Countermeasures to Reduce Red-Light Running," 3-hour online interactive course by Professionals Publishing Group d/b/a PDHdirect.com, July 19, 2011.
- "Sealing Joints and Cracks in Rigid and Flexible Pavements," 2-hour online interactive course by Professionals Publishing Group d/b/a PDHdirect.com, July 19, 2011.
- "General Provisions and Geometric Design for Roads, Streets, Walks and Open Storage Areas," 2-hour online interactive course by Professionals Publishing Group d/b/a PDHdirect.com, July 20, 2011.
- "Horizontal Curve Safety," 4-hr online course by G.J. Taylor, PE.  Course meets the Florida Board of PE's requirements and was administered by SunCam, Inc. on March 28, 2012.
- "Open-Graded Friction Courses (OGFC)," 2-hr online course by G.J. Taylor, PE. Course meets the Florida Board of PE's requirements and was administered by SunCam, 3/28/12.
- "Designing Streets for Pedestrian Safety," 8-hr course, instructor Michael Ronkin of firm Designing Streets for People, hosted by PEDS, Atlanta, Georgia, Sep. 24, 2012.
- "Access Management," 2-hr online course by D. A. Kennaugh, PE. Course meets the Florida Board of PE's requirements and was administered by SunCam, Inc. on October 8, 2012.
- "Complete Streets Design Implementation for Engineers", 3.5-hr course, instructor John LaPlante of firm TY Lin Intl., at ITE Annual Meeting & Exhibit, Boston, MA, Aug. 4, 2013

- "Work Zone Traffic Control," 4-hr online course by G.J. Taylor, PE. Course meets the Florida Board of PE's requirements and was administered by SunCam, Inc. on March 19, 2014.
- "Traffic Control Plans," 4-hr online course by D.A. Kennaugh, PE. Course meets the Florida Board of PE's requirements and was administered by SunCam, Inc. on March 19, 2014.
- "Laws and Rules Online," 4-hr online course by W.C. Dunn, PE. Course meets the PE requirements of all states except NY and OH and was administered by SunCam on May 13, 2014.
- "Lighting Design," 2-hr online course by D.A. Kennaugh, PE. Course meets the Florida Board of PE's requirements and was administered by SunCam on May 13, 2014.
- "Design of Bicycle Facilities," 4-hr online course by D.A. Kennaugh, PE. Course meets the Florida Board of PE's requirements and was administered by SunCam on May 13, 2014.
- "Training Course for Worksite Traffic Control Supervisors," satisfactory completion of 16 hours of instruction (including passing an exam) by The American Traffic Safety Services Association (ATSSA), Atlanta, Georgia, March 10-11, 2015
- "Ethics for U.S. Engineers," 1-hr online course by W.C. Dunn, PE. Course meets the PE requirements of almost all states and was administered by SunCam, Inc. on Sept. 22, 2015.
- "Florida Engineer Laws & Rules," 1-hr online course by W.C. Dunn, PE. Accepted for engineering continuing education credit in all states except New York, Ohio and New Mexico. Administered by SunCam, Inc. on September 23, 2015.
- "Pedestrian Safety," 4-hr online course by D.A.Kennaugh, PE. Course meets the PE requirements of all state Boards and was administered by SunCam, Inc. on Feb. 14, 2016.
- "Manual on Uniform Traffic Control Devices (MUTCD) I and II, two 4-hour courses by G.J.Taylor, PE; meet the PE requirements of all state Boards; admin. by SunCam Feb 14, 2016.
- "Roadway Cross-section Design," 4-hr online course by G.J. Taylor, PE. Course meets the PE requirements of all state Boards, was administered by SunCam, Inc. on March 1, 2016.
- "Pavement Markings," 4-hr online course by G.J. Taylor, PE. Course meets the PE requirements of all state Boards and was administered by SunCam, Inc. on January 12, 2017.
- "Traffic Signs," 4-hr online course by G.J. Taylor, PE. Course meets the PE requirements of all state Boards and was administered by SunCam on January 13, 2017.
- "Roadway Intersection Design," 4-hr online course by G.J. Taylor, PE. Course meets the PE requirements of all state Boards and was administered by SunCam on January 14, 2017.
- "Concrete Pavement Construction," 3-hr online course by J.E.Kristensen, PE,PLS. Course meets the PE requirements of all state Boards; administered by SunCam on February 3, 2017.
- "Asphalt Pavement Construction," 2-hr online course by J E Kristensen, PE, PLS. Course meets the PE requirements of all state Boards; administered by SunCam on February 4, 2017.
- "Florida Engineer Laws & Rules – Online," 1-hr online course by W C Dunn, PE. Course is required for the 2-year PE renewal period 2017-2019. Course meets the PE requirements of all state Boards. Administered by SunCam on April 14, 2017.
- "Ethics for U.S. Engineers," 1-hr online course by W C Dunn, PE. Course is required for the 2-year PE renewal period 2017-2019. Course meets the PE requirements of all state Boards. Administered by SunCam on April 14, 2017.
- "Roadway Vertical Alignments," 3-hr online course by G.J. Taylor, PE. Course meets the PE requirements of all state Boards; administered by SunCam on May 2, 2017.

- "Roadway Horizontal Alignment Design," 4-hr online course by G.J. Taylor, PE. Course meets the PE requirements of all state Boards; administered by SunCam on May 2, 2017.
- "Introduction to Storm Sewer Design," 2-hr course by D.F. Carter, PE. Course meets the PE requirements of all state Boards; administered by SunCam on June 19, 2017.
- "Horizontal Curve Design to Prevent the Rollover of Heavy Trucks," 1-hr course by D.L. Heavey, PE. Course meets the PE requirements of all state Boards; administered by SunCam on April 7, 2018.
- "Interchange Ramp Characteristics," 4-hr course by D.L. Heavey, PE. Course meets the PE requirements of all state Boards; administered by SunCam on April 16, 2018.
- "Design of Suburban Highways," 4-hr course by D.L. Heavey, PE. Course meets the PE requirements of all state Boards; administered by SunCam on April 17, 2018.
- "Ethics for Engineers," 1-hr course by W.C. Dunn, PE. Course meets the PE requirements of all state boards; administered by SunCam on July 9, 2018.
- "Florida Engineering Laws & Rules, Online for 2019" 1-hr course by W.C. Dunn, PE. Course meets the PE requirements of all state boards; admin. by SunCam on July 9, 2018.

## Safety-Related Presentations and Papers Published
See also Recent Sponsored Projects, above, for other safety-related writings.

- Parsonson, P.S., "Signalization of High-Speed, Isolated Intersections," *Record 681*, Transportation Research Board, Washington, D.C., 1978.
- Parsonson, P.S., Marks, J.R., and A.E. Nuñez, "Wrong-Way Traffic Movements on Freeway Ramps in Atlanta," *Compendium of Technical Papers*, Institute of Transportation Engineers 48th Annual Meeting, Atlanta, Georgia, 1978.
- Parsonson, P.S., Day, R.A., Gawlas, J.A. and G.W. Black, "EC-DC Detector in High-Speed Signalization," *Record 737*, Transportation Research Board, Washington, D.C., 1979.
- Nuñez, A. and P.S. Parsonson, "Safe Design of Parking Lots for Regional Shopping Centers," *Compendium of Technical Papers*, Institute of Transportation Engineers 49th Annual Meeting, Toronto, 1979.
- Parsonson, P.S. and A. Santiago, "Design Standards for Timing the Traffic-Signal Clearance Period Must be Improved to Avoid Liability," *Compendium of Technical Papers*, Institute of Transportation Engineers 50th Annual Meeting, Pittsburgh, 1980.
- Parsonson, P.S., and Rinalducci, E.J., "Positive Guidance Demonstration Project at a Railroad-Highway Grade Crossing" *Record 844*, Transportation Research Board, Washington, D.C., 1982.
- Parsonson, P.S., "Controversy in America Over the Timing of the Traffic-Signal Change Period," *Proceedings of the International Conference on Road Traffic Signaling*, Institution of Electrical Engineers, Computing and Control Division, London, 1982.
- Parsonson, P.S., *et al.*, "One-Way Streets and Reversible Lanes," Chapter 7 in *Synthesis of Safety Research Related to Traffic Control and Roadway Elements*, Vol. 1, Federal Highway Administration, Offices of Research Development and Technology, Washington, D.C., 1982.
- Sharp, K.A., and Parsonson, P.S., "Signal Complaint Aid for Dispatchers (SCAD): An Expert System," abridgement, *Record 1160*, Transportation Research Board, Washington, D.C., 1988.

- Bretherton, W. M., Womble, J. E., Parsonson, P.S. and Black, G. W., Jr., "One Suburban County's Policy for Selecting Median Treatments for Arterials," *Compendium of Technical Papers*, Institute of Transportation Engineers 60th Annual Meeting, Orlando, Florida, 1990.
- Squires, Christopher A. and Parsonson, Peter S., "Accident Comparison of Raised Median and Two-Way Left-Turn Lane Median Treatments," *Record 1239*, Transportation Research Board, Washington, D.C., 1989.
- Parsonson, P.S. and Walker, D.J., "Issues in Flashing Operation for Malfunctioning Traffic Signals," *Record 1368*, Transportation Research Board, Washington, DC., 1992. A condensation was published in the April, 1992 issue of *Public Works*, and the entire paper was published in the *ITE Journal* of September, 1992.
- Parsonson, P.S., Czech, W.S. and W.C. Bansley, *"Intervalos Amarillos y Todo-Rojo en Intersecciones Con Semáforo: Conductores y Abogados se Expresan,"* (Yellow and All-Red Signal Timing: Drivers and Attorneys Speak Out), VII Pan American Congress on Traffic and Transportation Engineering, Caracas, Venezuela, 1992. A condensation was published in the November, 1992 issue of *Public Works* and the entire paper was published in the *ITE Journal* of June, 1993. Also published in the proceedings of the First National Conference on Tort Liability and Risk Management for Surface Transportation, Penn. State Univ., 1993.
- Parsonson, P. S., Waters, M. and Fincher, J. S., "Effect on Safety of Replacing An Arterial Two-Way Left-Turn Lane with a Raised Median," published in the *Proceedings* of the First National Access Management Conference, Vail, Colorado,1993. Dr. Parsonson also presented an update titled "Medians vs. Two-Way Left-Turn Lanes: The Georgia Experience," at a numbered session of the Transportation Research Board's 75th Annual Meeting, Washington, D.C., 1996.
- Parsonson, P. S., "Vehicle Clearance Intervals - Plaintiff's View," *Compendium of Technical Papers*, 64th ITE Annual Meeting, Dallas, Texas, 1994.
- Jia, X. and P.S. Parsonson, "Expected Values for Accident Analyses at Atlanta Intersections," *Compendium of Technical Papers*, 65th Annual Meeting of the Institute of Transportation Engineers, Washington, D.C., 1995.
- Gimmestad, G.G., R.A. Carey, W.D. Daley, B.A. Harvey, M.J. Kelly, P.S. Parsonson and E.M. Patterson, "The Georgia Automated Adverse Visibility Warning and Control System," 13th Bi-Annual Symposium on Night Visibility and Driver Behavior, co-sponsored by the Transportation Research Board and the University of Iowa, Ames, Iowa, 1996. Also presented to and published by the 29th International Symposium on Automotive Technology and Automation (ISATA), Florence, Italy, 1996.
- Parsonson, P.S., "Prefabricated Medians to Reduce Crashes at Driveways Close to Intersections," Second National Conference on Access Management, sponsored by the Transportation Research Board, Vail, Colorado, 1996.
- Parsonson, P., Waters, M. and J. Fincher. "Two-Way Left-Turn Lane With a Raised Median: Atlanta's Memorial Drive," presented at the Third National Conference on Access Management, Fort Lauderdale, Florida, 1998. Published in the Conference Proceedings, pp. 133-140.
- Parsonson, Peter S., "Flexibility in Clearance Interval Timing," invited paper and presentation, 69th Annual Meeting, Institute of Transportation Engineers, Las Vegas, August 1-4, 1999. Published in the Compendium of Technical Papers.
- Davis, William J, Peter S. Parsonson and John D. Leonard, "Life Cycle Analysis of Urban Arterial Roadways; An Evaluation of Traffic Growth, Land Development, Access Spacing

and Crash Rates," accepted by the Transportation Research Board for presentation at the 79[th] Annual Meeting, January 9-13, 2000, Washington, D.C.

- Parsonson, Peter S., "Traffic Calming and Pedestrian Safety," three-hour presentation at the Carl Vinson Institute of Government, Univ. of Georgia, to 50 participants in the Executive Development Program for Southeastern Public Works Officials, April 20, 2000, Athens, GA.
- Parsonson, Peter S., "*Los Siete Defectos Más Peligrosos de las Carreteras en EE.UU.*" ("The Seven Most Hazardous Road Defects in the U.S."), presented to and published by the *IV Congreso de Ingeniería del Transporte*, Valencia, Spain, June 7-9, 2000. Also presented to and published by the *VI Jornadas Venezolanas de Transporte y Vialidad*, Universidad de Los Andes, Mérida, Venezuela, June 19-23, 2000. Presented (in English) to Kittleson & Associates, Inc., consulting transportation planners and traffic engineers, Portland, Oregon, August 15, 2000. Presented to a group of New Jersey DOT traffic engineers under the Seminar Series of the National Center for Transportation and Industrial Productivity, New Jersey Institute of Technology, Newark, November 16, 2000.
- Parsonson, Peter S., "*Lecciones Aprendidas en la Realización Estadounidense de los Centros de Gestión de Tránsito*" ("Lessons Learned in U.S. Experience with Transportation Management Centers"), presented to and published by the *VI Jornadas Venezolanas de Transporte y Vialidad*, Mérida, Universidad de Los Andes,Venezuela, June 19-23, 2000.
- Parsonson, Peter S., "*Transporte e Impacto Ambiental*" ("Transportation and Environmental Impact"), presented to and published by the *VI Jornadas Venezolanas de Transporte y Vialidad*, Universidad de Los Andes, Mérida, Venezuela, June 19-23, 2000.
- Parsonson, Peter S., "Case Study of Warning Signs Failing to Make a Bad Design Safe," presented to and published by the Institute of Transportation Engineers, Washington, D.C. for their ITE 2000 Annual Meeting and Exhibit, Nashville, Tennessee, August 6-9, 2000.
- Parsonson, Peter S., Marion G. Waters III and James S. Fincher, "Georgia Study Confirms the Continuing Advantage of Raised Medians Over Two-Way Left-Turn Lanes," presented to and published by the Fourth National Conference on Access Management, sponsored by the Transportation Research Board and the FHWA's Office of Technology Applications, and hosted by the Oregon DOT, Portland, August 14, 2000.
- Parsonson, Peter S., "An Engineer's Comments on Litigation Involving the MUTCD," presented to and published by the Georgia Section of the Institute of Transportation Engineers for their Millennium MUTCD Seminar, Atlanta, September 14, 2000. Presented to the Georgia Transportation Institute Seminar Series, Georgia Tech, November 17, 2000.
- Parsonson, Peter S., "When Sight Distance is Obstructed . . .", invited presentation at Session 44, Safety Lessons from the Courtroom, 2001 Annual Meeting and Exhibit, Institute of Transportation Engineers, Chicago, August 19-22, 2001. Repeated as an invited presentation to the Mid-Atlantic Section, Institute of Transportation Engineers (MASITE), Caesar's Atlantic City, NJ, October 1, 2004.
- Parsonson, Peter S., "Safe Sight Distance at Intersections," invited presentation at Session 2 – Safety Committee, of the 50[th] Annual Meeting, Southern District, Institute of Transportation Engineers, New Orleans, April 21-24, 2002.
- Parsonson, Peter S., "The Design Driver in Crash Litigation," invited presentation at Session 15, Lessons Learned in the Courtroom, 2002 Annual Meeting and Exhibit, Institute of Transportation Engineers, Philadelphia, August 4-7, 2002.

- Parsonson, Peter S., "Examples of Human Factors in Road-Defects Litigation," invited presentation at Session 20, Lessons Learned from the Courtroom, 2003 Annual Meeting and Exhibit, Institute of Transportation Engineers, Seattle, August 24-27, 2003.
- Parsonson, Peter S., "*Gestión de Centros de Tránsito*" ("Management of Transportation Centers"), presented to and published by the *III Congreso Nacional de Estudiantes de Ingeniería Civil*, Universidad de Los Andes, Mérida, Venezuela, November 27, 2003. Repeated as an invited presentation to the 2006 conference of the *Unión Pan Americana de Asociaciones de Ingeniería* (UPADI 2006), Atlanta, Georgia, September 21, 2006.
- Parsonson, Peter S., "Forensic-Engineering Analysis of the Four-Way-Stop-Intersection Illusion," presented at the January, 2004 Meeting of the National Academy of Forensic Engineers, J.W. Marriott Hotel, Washington, D.C., January 18, 2004. Published in the *Journal of the National Academy of Forensic Engineers,* Hawthorne, New York, June, 2004. Repeated as an invited presentation to the Georgia Section, Institute of Transportation Engineers, St. Simons Island, July 18-21, 2004. Repeated as an invited presentation to the Mid-Atlantic Section, Institute of Transportation Engineers (MASITE), Atlantic City, NJ, October 1, 2004.
- Parsonson, Peter S., "Liability/Safety Issues at Signalized Intersections," invited presentation at Session 23, Intersection Safety Toolbox: Traffic Signal Operations, Institute of Transportation Engineers' 2004 Technical Conference and Exhibit, in cooperation with the Federal Highway Administration, Irvine, California, March 28-31, 2004.
- Parsonson, Peter S., "Visualize the Consequences of Your Inaction!" invited presentation to the annual joint meeting of the Institute of Transportation Engineers (ITE) and the Intelligent Transportation Society (ITS), both the Georgia Sections, at Southern Polytechnic University, Marietta (Atlanta), Georgia, October 16, 2008.
- Parsonson, Peter S. and attorney David C. Sawyer, "When Can the Highway-Engineering Design Firm be Successfully Sued?" invited presentation to the American Society of Highway Engineers, Georgia Section, Holiday Inn Select Atlanta-Perimeter, 1.0 hr, October 19, 2012.
- Parsonson, Peter S. and attorney David C. Sawyer, "When Can the Transportation-Engineering Designer be Successfully Sued?" invited presentation to the Institute of Transportation Engineers, Georgia Section, at its Summer Seminar, King & Prince Hotel, St. Simons Island, 1.0 hr, July 24, 2013.